IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAVID E. PIERCE, # N-42226,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 13-cv-773-JPG |
| ) | |
| **LINDA RUNGE, DR. CHHABRA,** ) | |
| **UNKNOWN PARTY DOCTOR,** ) | |
| **S.A. GODINEZ, DAVID CONN,** ) | |
| **and JULIE HAMOS,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Big Muddy River Correctional Center ("BMRCC"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claim arose not in his current institution, but in 2005 while he was serving a previous sentence at Shawnee Correctional Center ("Shawnee"). Plaintiff claims that his medical providers at the time were deliberately indifferent to a serious medical condition.

Plaintiff's statement of claim (Doc. 1, pp. 6-7) is relatively brief. However, he includes 101 pages of exhibits, most of which are medical records. Some of the facts in the following summary are gleaned from those attachments, where Plaintiff did not include specific information in his statement.

Plaintiff began to experience numbness in his right foot in January or February of 2005, which he attributed to ill-fitting boots. When the numbness began to affect his right leg, back, and stomach, he sought medical care from the Unknown Party Defendant Doctor and the nurse practitioner, whom he identifies as Defendant Runge. According to Plaintiff's grievance filed in

2012, he first went to sick call for this problem in February 2005 (Doc. 1-1, p. 2). The doctor treated him with medication, including Ibuprofen of varying doses, "Naprocen" and "Napraceen" (Doc. 1, p. 6).[1] Plaintiff was also given a quad cane. In addition, Plaintiff had x-rays in March 2005, as well as other tests that were performed in the prison hospital (Doc. 1, p. 6; Doc. 1-2, p. 27).

Plaintiff's mobility continued to decline, and he had to quit his prison job as a painter. In May, June, and July of 2005, he saw a new prison doctor, who sent him to an outside neurologist for testing. The "Initial Neurological Consult" took place on July 7, 2005, according to the report from this examination (Doc. 1-2, p. 52). Further tests were performed at the recommendation of the neurologist. On July 22, 2005, Plaintiff was diagnosed with a "very large disc herniation at C6-7" where "disc material [had] migrated up . . . causing [spinal] cord compression" (Doc. 1-2, p. 55; Doc. 1-1, p. 2). Surgery was recommended to relieve the compression of the spinal cord, and Plaintiff had this operation on July 26, 2005 (Doc. 1-1, pp. 23-24). According to Plaintiff's narrative in the attached grievance, he had a total of two surgeries (Doc. 1-1, p. 2).

Before the operations, Plaintiff's mobility was so bad that he needed a wheelchair (Doc. 1, p. 7). He claims that if he had received treatment earlier from the prison medical staff, he would have been able to regain more of his mobility. Now, several years after the surgery, Plaintiff still takes medication for severe back and joint pain, and still has some limited mobility and numbness in his feet, legs, and midsection. *Id*.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the

---

[1] Plaintiff's attached medical records state that he was treated with Naprosyn and Neurontin starting in February 2005 (Doc. 1-2, p. 52). This treatment was stopped for "a few weeks" but then resumed. *Id*.

complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. After fully considering the allegations in Plaintiff's complaint as well as his exhibits, the Court concludes that this action is subject to summary dismissal.

Deliberate indifference by a medical provider to a prisoner's serious medical needs may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). As to the subjective component, a complaint must indicate that the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Farmer,* 511 U.S. at 842.

Plaintiff describes a medical condition that turned out to be objectively very serious. When he first sought treatment, his symptoms were less severe, but gradually became worse over time. Having satisfied the objective component of an Eighth Amendment claim, the pertinent question here is whether Plaintiff's prison medical providers acted with deliberate indifference to a known risk of serious harm.

According to Plaintiff's description of events, he received treatment from the prison doctor and nurse practitioner soon after he requested it, in the form of medication, a cane to assist his mobility, x-rays, and other tests.  While these measures did not fully relieve his symptoms nor prevent his condition from progressing, Plaintiff did receive treatment and diagnostic testing.  He gives no indication that his complaints were ignored or that medical care was intentionally delayed.  Ultimately, he was referred to a specialist, and his neurological consultation took place no more than five months (February to July 7, 2005) after he first complained of symptoms.  This "delay" does not appear excessive under the circumstances, and more to the point, does not suggest deliberate indifference on the part of the prison staff.  Once his problem was diagnosed, his documents show that his referral for surgery was quickly approved.

An inmate's mere dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).  Further, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm."  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

In Plaintiff's case, he clearly is not satisfied with the outcome of his surgery and believes he would have been better off if he had been given an operation sooner.  However, even if the Defendants' prescribed course of treatment had constituted malpractice, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In evaluating

the evidence, we must remain sensitive to the line between malpractice and treatment that is so far out of bounds that it was blatantly inappropriate or not even based on medical judgment . . . this is a high standard." *King v. Kramer,* 680 F.3d 1013, 1019 (7th Cir. 2012) (internal citations and quotations omitted).  Plaintiff's allegations do not meet this standard.  Far from demonstrating deliberate indifference, the complaint and documentation show that Plaintiff received treatment for his medical needs.

In addition to the named and unnamed Shawnee medical staff (Defendants Runge, Chhabra, and Unknown Doctor), Plaintiff includes other Defendants (Godinez, Conn, and Hamos) who were not employed at Shawnee.  He does not include any specific allegations against any of these latter Defendants.  Because the complaint does not indicate that the Shawnee doctors or nurse practitioner were deliberately indifferent to Plaintiff's condition, there is no basis for liability on the part of these other Defendants.

For the above reasons, this civil rights action shall be dismissed with prejudice.

**Disposition**

This case is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal.  *See*

FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  See FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  August 30, 2013**

> s/J. Phil Gilbert
> **United States District Judge**